UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                               :
MALIBU MEDIA, LLC,                                             :
                                                               :      Case No. 1:15-cv-10133-RA
                              Plaintiff,                       :
                                                               :      Judge Abrams
              vs.                                              :
                                                               :
                                                               :
JOHN DOE subscriber assigned IP address                        :
24.90.48.223,                                                  :
                                                               :
                              Defendant.                       :
---------------------------------------------------------------X

# DECLARATION OF COLETTE FIELD IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE

[Remainder of page intentionally left blank]

## DECLARATION OF COLETTE PELISSIER FIELD IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

**I, COLETTE PELISSIER FIELD, DO HEREBY DECLARE:**

1. I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2. My husband Brigham Field, a photographer, and I, a former real estate agent, own Malibu Media, LLC d/b/a X-Art.com. We began the business from scratch after the real estate market started heading south.

3. We decided to start Malibu Media, LLC because my husband and I both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. We believed that the vast majority of the then-existing erotic content was crude and demeaning to women. We believed that creating couple- and female-friendly erotica with a high production value and a cinematic quality would satisfy what we hoped would be an unfulfilled demand.

4. We chose the name "X-Art" for our business, and created the website X-Art.com, to reflect our aspirations of creating artistic and beautiful erotica. My husband and I invested all of our available money and resources into the production of such content.

5. My husband and I were the sole founders of Malibu Media, LLC and its predecessor, our partnership. We are currently—and have always been—the sole owners and creators of Malibu Media, LLC and its copyrighted content. Malibu Media, LLC itself is responsible for conceptualizing, producing, selling, and licensing all of its own work, which it rightfully copyrights. No other person or entity has or can claim an ownership interest in our business or our copyrighted works.

1

EXHIBIT A

6. With hard work and good fortune, our vision has come to fruition. Our company has won numerous awards including, most recently, the "2015 Adult Site of the Year." Indeed, our website has tens of thousands of members who pay monthly or annual subscription fees to access our entire library of HD video content.

7. Although Brigham and I supplement our subscription income by licensing our works in over 50 countries and on three major U.S. cruise lines, our internet subscription sales are and always have been our primary source of revenue by far.

8. As our business has grown, our production value and expenses have also grown. We spend over two millions dollars each year producing the best quality content possible, and millions more each year to run our business.

9. Despite our success, we have encountered a significant problem with internet piracy and Brigham and I have been finding it harder and harder to grow and maintain our subscribers and, to a certain extent, our licensing deals. Although we have never authorized anyone to distribute our content over the internet, tens of thousands of U.S. citizens are apparently downloading and distributing our works for free each month through peer-to-peer file sharing networks and, specifically, the BitTorrent protocol.

10. Although piracy was not a notable problem during the first three years of Malibu Media, LLC's operation, it is now a serious threat to our business because more people steal our works via BitTorrent than pay for subscriptions. Our subscribers are becoming increasingly aware of this, and we receive complaints from our paying members asking why they should continue to subscribe when others are stealing our works via BitTorrent without consequence.

2

EXHIBIT A

6. With hard work and good fortune, our vision has come to fruition. Our company has won numerous awards including, most recently, the "2015 Adult Site of the Year." Indeed, our website has tens of thousands of members who pay monthly or annual subscription fees to access our entire library of HD video content.

7. Although Brigham and I supplement our subscription income by licensing our works in over 50 countries and on three major U.S. cruise lines, our internet subscription sales are and always have been our primary source of revenue by far.

8. As our business has grown, our production value and expenses have also grown. We spend over two millions dollars each year producing the best quality content possible, and millions more each year to run our business.

9. Despite our success, we have encountered a significant problem with internet piracy and Brigham and I have been finding it harder and harder to grow and maintain our subscribers and, to a certain extent, our licensing deals. Although we have never authorized anyone to distribute our content over the internet, tens of thousands of U.S. citizens are apparently downloading and distributing our works for free each month through peer-to-peer file sharing networks and, specifically, the BitTorrent protocol.

10. Although piracy was not a notable problem during the first three years of Malibu Media, LLC's operation, it is now a serious threat to our business because more people steal our works via BitTorrent than pay for subscriptions. Our subscribers are becoming increasingly aware of this, and we receive complaints from our paying members asking why they should continue to subscribe when others are stealing our works via BitTorrent without consequence.

11. Since the piracy of our works has made it increasingly difficult for us to continue to grow and maintain our subscribers and licensing deals, we have determined that we absolutely must protect our copyrights. To that end, we continually invest significant resources into pursuing all types of anti-piracy enforcement, such as issuing Digital Millennium Copyright Act ("DMCA") takedown notices and directly contacting websites that unlawfully host our works.

12. Despite sending thousands of DMCA takedown notices per week, the infringement continues. And, if one searches for "X-Art" on a torrent website, the site will reveal thousands of unauthorized torrents available for free. Again, we have _never_ uploaded or authorized anyone to upload our works to the BitTorrent protocol.

13. Brigham and I have gone over and reevaluated our options many, many times, and we believe that it is simply impossible to compete with free. We feel that we must exercise our rights under the Copyright Act to prevent infringement and preserve our business. The only way to do this, we believe, is to go after the people who are stealing our works. If we acquiesce in the theft, we face an immediate and serious risk to our business—our licensees may opt out of licensing deals and our subscribers may elect to steal rather than purchase our works. Without these suits, I believe infringers would feel free to steal our movies without consequence and many of our current paying members would similarly resort to theft.

14. We do not seek to use the Court system to profit from infringement, the way some people suggest. As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business. Our primary focus is on creating high quality niche adult content for our business, on growing and maintaining our subscribers, and on growing and maintaining our licensing deals. We file lawsuits to protect our copyrights and preserve our business, not to supplement our income. In other words, the purposes of filing

3

lawsuits is to motivate people to pay for subscriptions by deterring infringement and to obtain some reasonable compensation for the massive amount of infringement of our copyrights.

15. Consistent with our goals, we have instructed our legal team to only pursue the worst of our infringers (*i.e.*, those who repeatedly download and distribute our copyrighted content online over an extended period of time). We name one infringer in each lawsuit, and only pursue those against whom we have sufficient evidence and a good faith reasonable belief as to liability. Brigham and I have repeatedly asked our attorneys to listen to exculpatory evidence and to be prudent and use caution when pursuing our claims. And, I believe our attorneys are doing their best to enforce our copyrights in a lawful and appropriate manner.

16. Although Brigham and I believe that X-Art is artistic and beautiful and easily distinguishable from much of the low-quality pornography produced by other studios, we appreciate and understand that many people are embarrassed about being associated with adult content. To obviate the risk or possibility of an innocent person trying to settle one of our lawsuits purely out of embarrassment, we have instructed our legal team to always allow defendants to litigate through discovery anonymously—appearing to the public as simply a "John Doe."

17. And because our intention is not to cause financial hardship, we have instructed our legal team to consider defendants' financial situations when negotiating settlements. This is an issue that is particularly important to Brigham and me—we have no interest in accepting payment from innocent or financially struggling individuals. We have instructed our legal team to dismiss cases rather than accept settlements when provided with credible information to show that a defendant offering a settlement is either innocent or otherwise experiencing genuine financial hardship.

18. We also routinely decide not to pursue claims based on other fact specific circumstances. For example, we may learn that a defendant is on active duty in the military. Cases with similar unique circumstances are not pursued. To emphasize the point, we only pursue the worst of our infringers and only when we believe we have identified the responsible infringer.

19. We want the courts to know that we are a small business and we need the law to be enforced to ensure our survival. We hope that in the future there will be a better way for us to protect our copyrights and preserve our business. We are passionate about our work and our business. For us, this is the American Dream! It is our hope that by upholding the law, the courts will protect our ability to continue with our dream and allow all creative people the ability to make a living by distributing their work in this fast-paced digital age.

20. I previously paid IPP International UG to verify that certain digital media files identified by unique cryptographic file hash values are copies of Malibu Media's original copyrighted works. IPP has verified that these files are copies of Malibu Media's original works, and Tobias Fieser, an employee of IPP, has submitted sworn declarations so stating in other Malibu Media cases set forth on Exhibit D to the Motion for Leave.

21. I have now engaged Excipio to verify that certain digital media files identified by unique cryptographic file hash values are copies of Malibu Media's original copyrighted works. As set forth on Exhibit D and in Daniel Susac's declaration, Excipio has verified that these files are copies of Malibu Media's original works.

5

EXHIBIT A

22. Thank you in advance for your time and consideration of this matter, please do not hesitate to ask if we can clarify any further questions.

**FURTHER DECLARANT SAYETH NAUGHT.**

**DECLARATION**

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of November, 2015

**COLETTE PELISSIER FIELD**

By: *[signature]*